BENJAMIN B. WAGNER
United States Attorney
SYLVIA QUAST
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814

Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al. | Case No. 2:11-cv-00590 EFB |
| Plaintiffs, | CONSENT DECREE |
| v. | |
| FORWARD, INC., | |
| Defendant. | |

## TABLE OF CONTENTS

I. JURISDICTION AND VENUE ....................................................................................... - 2 -

II. APPLICABILITY ............................................................................................................ - 2 -

III. DEFINITIONS ................................................................................................................. - 3 -

IV. CIVIL PENALTY ............................................................................................................ - 4 -

V. COMPLIANCE REQUIREMENTS ................................................................................. - 5 -

VI. ADDITIONAL INJUNCTIVE RELIEF .......................................................................... - 8 -

VII. REPORTING REQUIREMENTS .................................................................................... - 9 -

VIII. STIPULATED PENALTIES .......................................................................................... - 11 -

IX. FORCE MAJEURE ........................................................................................................ - 13 -

X. DISPUTE RESOLUTION .............................................................................................. - 15 -

XI. INFORMATION COLLECTION AND RETENTION ................................................... - 17 -

XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ................................ - 19 -

XIII.   COSTS ............................................................................................................. - 20 -

XIV.   NOTICES ......................................................................................................... - 20 -

XV.    EFFECTIVE DATE .......................................................................................... - 22 -

XVI.   RETENTION OF JURISDICTION ................................................................. - 22 -

XVII.  MODIFICATION .............................................................................................. - 22 -

XVIII. TERMINATION ................................................................................................ - 22 -

XIX.   PUBLIC PARTICIPATION ............................................................................. - 23 -

XX.    SIGNATORIES/SERVICE ............................................................................... - 23 -

XXI.   INTEGRATION ................................................................................................ - 24 -

XXII.  FINAL JUDGMENT ......................................................................................... - 24 -

XXIII. APPENDICES .................................................................................................. - 24 -

Plaintiffs United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and the San Joaquin Valley Unified Air Pollution Control District ("District") filed a complaint in this action on March 2, 2010, as amended by a Second Amended Complaint filed concurrently with this Consent Decree, alleging that Defendant Forward, Inc., violated Sections 111, 112, and 502 of the Clean Air Act ("Act"), 42 U.S.C. §§ 7411, 7412, and 7661a , and California Health and Safety Code §§ 39000 *et seq*.

The Complaint alleges that from 2006 to the present, Defendant, as owner and operator of the Forward Landfill ("Landfill") in Manteca, California, has operated the Landfill's gas collection and control system ("GCCS") in violation of the operating permit that Defendant obtained from the District pursuant to the Title V of the Act ("Operating Permit") and in violation of regulations for municipal solid waste landfills promulgated by EPA pursuant to the Act.  The alleged violations include operating the Landfill's GCCS to allow oxygen concentrations to exceed the 15% limit and the 55 degree Celsius temperature limit for landfill gases in the Operating Permit, failing to operate the Landfill's GCCS in a manner that would prevent overdraw that could cause fires, submitting inaccurate certifications of compliance and an incomplete response to EPA's information request under section 114 of the Act, and failing to submit deviation reports to the District and EPA.   The Complaint also alleges that Defendant violated District Rule 2010 and the California State Implementation Plan by operating a composting facility, a green waste and food receiving operation, a screening machine, and a tub grinder at the Landfill without first obtaining appropriate permits from the District.

Defendant denies the allegations of the Complaint and does not admit any liability to the United States or the District arising out of the transactions or occurrences alleged in the Complaint.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 113 and 304(a) of the Act, 42 U.S.C. §§ 7413, 7604(a), and over the Parties.  The Court has jurisdiction over the District Rule violation claims asserted by the District pursuant to 28 U.S.C. § 1367.  Venue lies in this judicial district pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), Section 304(c) of the Act, 42 U.S.C. § 7604(c), and 28 U.S.C. §§ 1391(b) and 1395(a), and 28 U.S.C. §§ 1391(b) and 1395(a), because the violations alleged in the Complaint are alleged to have occurred in, and Defendant conducts business in, this judicial district.

2.      For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction and to venue in this judicial district.   For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted under Sections 113 and 604 of the Act, 42 U.S.C.  § 7413 and § 7604, and California Health and Safety Code sections 39000 et seq.

## II. APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United States and the District, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented.  At least 30 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 9, the United States Attorney for the Eastern District of California, and the United States Department of Justice, in accordance with Section XIV of this Decree (Notices).  Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

5.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree.  Defendant shall

condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

III. <u>DEFINITIONS</u>

7.      Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      "CO Analysis" shall mean the analysis of carbon monoxide ("CO") gas captured in either a summa canister or Cali-5-Bond Bag®, which is performed by a third-party independent laboratory that uses ASTM-1945, ASTM-1946, or an equivalent method with a detection limit of at least 100 parts per million by volume ("ppmv") of CO in high concentrations of methane. Alternatively, Defendants may analyze CO concentrations by using Draeger tubes or similar colorimetric gas detection tubes, provided that such CO collection and analysis shall be done in accordance with manufacturer instructions, and provided, that if the CO concentrations analyzed using such tubes exceed 200 ppmv for a sample, Defendants shall re-sample and re-analyze the landfill gas well using a third-party independent laboratory as provided above.

b.      "Complaint" shall mean the Second Amended Complaint filed concurrently with this Consent Decree by the United States and the District;

c.      "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto;

d.      "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

e.      "Defendant" shall mean Forward, Inc.;

f.     "District" shall mean the San Joaquin Valley Unified Air Pollution Control District;

g.     "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

h.     "Effective Date" shall have the definition provided in Section XV.

i.     "Facility" shall mean Defendant's landfill located in Manteca, California;

j.     "GCCS" means the Facility's gas collection and control system described in the Facility's Title V permit;

k.     "Paragraph" shall mean a portion of this Decree identified by an arabic numeral;

l.     "Parties" shall mean the United States, the District, and Defendant;

m.    "Plaintiffs" shall mean the United States and the District;

n.     "Section" shall mean a portion of this Decree identified by a roman numeral;

o.     "United States" shall mean the United States of America, acting on behalf of EPA.

## IV. CIVIL PENALTY

8.     Within 30 Days after the Effective Date of this Consent Decree, Defendant shall pay the sum of $100,000 to the United States Department of Justice as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.  Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant, following entry of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Eastern District of California, 501 I Street Suite 10-100, Sacramento, CA 95818, (916) 554-2700.  At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States et al. v. Forward, Inc,* E.D. Cal. Case No. 2:11-cv-00590-EFB, and shall reference the DOJ file

number 90-5-2-1-09873, to the United States in accordance with Section XIV of this Decree (Notices); by email to acctsreceivable.CINWD@epa.gov; and by mail to:

        EPA Cincinnati Finance Office
        26 Martin Luther King Drive
        Cincinnati, Ohio  45268

        9.     Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating its federal, state or local income tax.

        10.    No later than 30 Days after the Effective Date of this Consent Decree, Defendant shall pay a civil penalty of $100,000 to the District by check made payable to the "San Joaquin Valley Unified Air Pollution Control District" and delivered by U.S. Mail to its District Counsel's office, located at 1990 E. Gettysburg Avenue, Fresno, California 93726.

V.  <u>COMPLIANCE REQUIREMENTS</u>

        11.    Except as provided in Paragraph 13, Defendant shall comply with all permits issued for the Facility pursuant to the Act, District Rules 2010, 2070, 2201, and 2520, and with all applicable requirements in the following regulations relating to the operation of the GCCS:

        a.     "New Source Performance Standards for Municipal Solid Waste Landfills," 40 C.F.R. Part 60, Subpart WWW, 40 C.F.R. §§ 60.750-60.759 ("Landfill NSPS"); and

        b.     "National Emission Standards for Hazardous Air Pollutants: Municipal Solid Waste Landfills," 40 C.F.R. Part 63, Subpart AAAA, 40 C.F.R. §§ 630.1930-630.1990 ("Landfill NESHAP").

        12.    In addition to the applicable compliance requirements set forth in Paragraph 11, Defendant shall comply with the following specific requirements, which shall be completed no later than thirty (30) days from the Effective Date of the Consent Decree, except as provided in subparagraphs (a) and (b):

        a.     Defendant shall complete the Defendant's previously planned "Improvements to Facility GCCS" described in Appendix A by October 31, 2012;

        b.     By December 31, 2012, Defendant shall apply to the District on an expedited basis for, and take all necessary action to obtain, a modification to its Title V operating permit for the Facility that will require it to operate interior wells in the GCCS at oxygen levels at less than the

numerical limit specified in 40 C.F.R. § 60.753(c) (the numerical limit is currently 5 percent) at the time of Defendant's application.  Defendant's application may seek higher limits for the wells in the Interim Well Program described in Appendix B at the time of Defendant's application, but must justify higher limits for each such well pursuant to 40 C.F.R. § 60.753(c);

        c.     Defendant shall move gas probes 7 through 12 located at the edge of the Landfill at least one hundred (100) feet outside of the waste line and shall maintain a minimum 100-foot buffer between the probes and the waste;

        d.     Defendant shall comply with the intermediate cover requirements established in California Code of Regulations Title 27 §§ 20700-20705, and shall implement a program to monitor, on a monthly basis, the integrity of the Landfill's cover, and shall implement Landfill cover repairs as necessary, as provided in 40 C.F.R. § 60.755(c)(5);

        e.     Defendant shall implement a program to monitor, on a monthly basis, the integrity of all well boots and seals in the GCCS, and shall repair and replace those well boots and seals as necessary to minimize oxygen intrusion into the Landfill; and

        f.     If any well is installed after February 1, 2012, as part of the GCCS, Defendant shall install a sampling port at each such wellhead to take measurements of oxygen and other parameters, as provided in 40 C.F.R. § 60.756(a).

        13.     <u>Interim Wellhead Oxygen Limits</u>.  Between the Effective Date of this Consent Decree and the effective date of the modified permit that Defendant will apply for pursuant to Paragraph 12(b) of this Consent Decree, Defendant shall operate each interior wellhead in the GCCS with an oxygen level at less than the numerical limit specified in 40 C.F.R. § 60.753(c) (the numerical limit is currently 5 percent), except as provided for in Appendix B.

        14.     <u>Interim Wellhead Gas Temperature Limits</u>.

        a.     Between the Effective Date of this Consent Decree and the effective date of the modified permit that Defendant will apply for pursuant to Paragraph 12(b), Defendant shall operate extraction wells A11-05, A11-06, A11-07, A11-08, A11-09, A11-10, A11-11, FU03-01R, FU04-14R, FU04-15R, FU04-18R, FU04-27R, FU05-08R, FU05-10R, FU06-15, FU06-16, FU08-02, and FU08-03 at a gas temperature of no more than 141° F.  If after the Effective Date of the Consent

Decree and prior to the effective date of the modified permit, the gas temperature in one of these wells exceeds the gas temperature limit specified in 40 C.F.R. § 60.753(c) (currently 55º C or 131º F), Defendant shall conduct a CO Analysis for that well within five business days of the exceedance. Defendant shall report the results in the quarterly reports required pursuant to Paragraph 17.  If any CO Analysis reading is 1000 ppmv or above, Defendant shall notify EPA and the District Compliance Office verbally and via email within 24 hours of receipt of such reading.  Also, if the gas temperature in one of these wells exceeds 141 degrees Fahrenheit, Defendant shall initiate corrective action within five Days.  If correction of the exceedance cannot be achieved within 120 Days of the initial exceedance, Defendant shall:

        i.        Submit a request to EPA and the District for an alternative timeline for correcting exceedance; or

        ii.        Request an alternative gas temperature limit pursuant to Subparagraph (b) below; or

        iii.        Undertake such other corrective action as mutually agreed to by the Defendant and EPA.

        b.        As described in subparagraphs 14(a)(ii) and 14(c)(ii), Defendant may request an alternative gas temperature limit for the wellheads identified in this Paragraph by submitting its request in writing to EPA and the District.  Any such request shall contain all available sampling and other evidence relevant to EPA's and the District's consideration of the requesting, including, but not limited to, the existence of suspected or actual subsurface combustion.  At the Defendant's request, EPA and the District will meet with the Defendant to provide it an opportunity to present the reasons for its request.  EPA and the District shall be guided in their decision by the following standards:  If the results of two consecutive monthly CO Analyses for a given well that are taken immediately prior to Forward's request are below 200 ppmv, then Forward may stop monthly CO monitoring and operate the well with the higher operating temperature, but not to exceed 145 ºF.  If the monthly CO Analysis is above 200 ppmv and below 500 ppmv, Forward shall continue monthly monitoring but may still utilize the higher operating temperature, but not to exceed 145 ºF.  If the well is above 145ºF or CO is above 500 ppmv, Forward shall close the well as corrective action and undertake such further actions as directed by

District and/or EPA to further investigate the potential for a subsurface fire in the area of the well. After considering Defendant's request, EPA and the District will either grant the request or deny it, in writing. If EPA and the District grant Defendant's request for an alternative wellhead gas temperature limit for an existing wellhead, the alternative approved limit shall immediately supersede the previously applicable limit and become the new interim temperature limit for that wellhead.

          c.    For any well installed after February 1, 2012, if the gas temperature in one of these wells exceeds 131 degrees Fahrenheit, Defendant shall initiate corrective action within five Days. If correction of the exceedance cannot be achieved within 120 Days of the initial exceedance, Defendant shall:

          i.    Submit a request to EPA and the District for an alternative timeline for correcting exceedance; or

          ii.    Request an alternative gas temperature limit pursuant to Subparagraph (b) above; or

          iii.    Undertake such other corrective action as mutually agreed to by the Defendant and EPA.

    15.    <u>Permits</u>.  Where any compliance obligation under this Section requires Defendant to obtain a federal, District, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  Defendant may seek relief under the provisions of Section IX of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

VI. <u>ADDITIONAL INJUNCTIVE RELIEF</u>

    16.    By December 31, 2012, Defendant will replace the seven diesel trucks currently in use in the Stockton area and three diesel trucks currently in use in the Fresno area that are all listed under the heading "2012 Replacements Stockton and Fresno" on Appendix C attached hereto, with model year 2010 or newer diesel fuel trucks. By December 31, 2013, Defendant will replace the nine diesel trucks currently in use in the Fresno area that are all listed under the heading "2013 Replacements

Fresno" on Appendix C attached hereto, with model year 2010 or newer diesel fuel trucks or, at Defendant's sole option, with CNG or LNG fueled trucks.  The parties agree that implementing the truck replacement project described in this Section will reduce air emissions beyond emission reductions required by applicable California regulations, including the Diesel Particulate Matter Control Measures, 13 CCR §§ 2020 - 2021, and estimate those extra reductions to be approximately 83.2 tons of nitrogen oxide and 3.4 tons of particulate matter.  Any public statement, oral or written, in print, film, or other media, made by Defendants making reference to the Additional Injunctive Relief under this Section shall include the following language:  "This project was undertaken in connection with the settlement of an enforcement action, United States, et al. v. Forward, Inc, taken on behalf of the U.S. Environmental Protection Agency and the San Joaquin Valley Unified Air Pollution Control District under the Clean Air Act."  Defendants shall not use or rely on emissions reductions generated as a part of the Additional Injunctive Relief under this Section in any federal, state, or local emissions averaging, banking, trading, netting, credit, or offset program.

## VII. REPORTING REQUIREMENTS

17.     After lodging of this Consent Decree and until termination of this Decree pursuant to Section XVIII, Defendant shall submit a quarterly report on March 30, June 30, September 30, and December 31 for the preceding quarter that includes the well monitoring data for the quarter for those parameters included in Defendant's semi-annual Title V reports to the District and EPA, the status of any construction required by Appendix A, the status of all activities required by subsection 12(c) through (f), the information required in paragraph 7 of Appendix B, and the status of any pending permit applications required by this Consent Decree.  The report shall also include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  The information required in a quarterly report for the second quarter of the period covered by any of Defendant's Semi-Annual Reports may be submitted in the Semi-Annual Report in lieu of a separate quarterly report.  If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify the United States and the District of such violation and its likely duration, in writing, within ten working Days of the Day that Defendant first becomes aware of

the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report.  Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section IX of this Consent Decree (Force Majeure).  As used herein, a permit violation will not be deemed to have occurred, and no deviation report need be submitted by Defendant to EPA or the District, if a given interior gas extraction wells exceeds the NSPS operating parameters in 40 CFR section 60.753(b)(3) for oxygen, nitrogen, or temperature so long as Forward is in compliance with the corrective action timelines in 40 CFR section 60.755(a)(5).

18.     Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA and the District orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

19.     All reports shall be submitted to the persons designated in Section XIV of this Consent Decree (Notices).

20.     Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

21. The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

22. Any information provided pursuant to this Consent Decree may be used by the United States or the District in any proceeding to enforce the provisions of this Consent Decree or any violation of federal or state law and as otherwise permitted by law.

VIII. <u>STIPULATED PENALTIES</u>

23. Defendant shall be liable for stipulated penalties to the United States and the District for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure).

24. <u>Late Payment of Civil Penalty.</u>  If Defendant fails to pay the civil penalty required to be paid under Section IV of this Decree (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $1000 per Day for each Day that the payment is late.

25. <u>Interim Limits</u>. The following stipulated penalties shall accrue per violation per Day for each violation of a requirement of Paragraphs 13 or 14:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $ 1000 | 1st through 14th Day |
| $ 2000 | 15th through 30th Day |
| $ 2500 | 31st Day and beyond |

A well will not be considered to be in violation of Paragraphs 13 or 14 for purposes of this Paragraph during the time period that Defendant is taking corrective action in accordance with 40 C.F.R. § 60.755(a)(5).

26. <u>Injunctive Relief.</u>  The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in Paragraphs 12 and 16:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $ 1000 | 1st through 14th Day |
| $ 2000 | 15th through 30th Day |
| $ 2500 | 31st Day and beyond |

27.   <u>Reporting Requirements</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VII and Appendix B, paragraph 7, of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 1000 | 1st through 14th Day |
| $ 2000 | 15th through 30th Day |
| $ 4000 | 31st Day and beyond |

28.   If Defendant fails to perform as required by this Consent Decree or violates this Consent Decree, stipulated penalties under this Section shall begin to accrue on the Day after the performance was due or on the Day a violation occurred, whichever is applicable, and shall continue to accrue until performance is completed or until the violation ceases.  However, if a stipulated penalty would otherwise accrue because a report required by Section VII or Appendix B, paragraph 7, is deemed by the United States or the District to contain a material deficiency, stipulated penalties shall not begin to accrue until the United States or the District has notified Defendant of any such deficiency. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

29.   Defendant shall pay stipulated penalties to the United States and the District within 30 Days of a written demand by either Plaintiff.  Defendant shall pay 50 percent of the total stipulated penalty amount due to the United States and 50 percent to the District.  The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.

30.   Either Plaintiff may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

31.   Stipulated penalties shall continue to accrue as provided in Paragraph 29, during any Dispute Resolution, but need not be paid until the following:

a.   If the dispute is resolved by agreement or by a decision of EPA or the District that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States or the District within 30 Days of the effective date of the agreement or the receipt of EPA's or the District's decision or order.

b.      If the dispute is appealed to the Court and the United States or the District prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.      If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

32.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 8, except that the transmittal letter shall state that the payment is for stipulated penalties and shall identify the violations for which the penalties are being paid.  Defendant shall pay stipulated penalties owing to the District by check made payable to the "San Joaquin Valley Unified Air Pollution Control District" and delivered by U.S. Mail to its District Counsel's office, located at 1990 E. Gettysburg Avenue, Fresno, California 93726.

33.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States or the District from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

34.     Subject to the provisions of Section XII of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a violation of a Clean Air Act requirement, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## IX. FORCE MAJEURE

35.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors that delays or prevents the performance of any obligation under this Consent

Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.  "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

36.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to the Plaintiffs within 72 hours of when Defendant first knew that the event might cause a delay.  Within seven business days thereafter, Defendant shall provide in writing to EPA and the District an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

37.    If EPA, after a reasonable opportunity for review and comment by the District, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the District, for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of

any other obligation.  EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

38.     If EPA, after a reasonable opportunity for review and comment by the District, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

39.     If Defendant elects to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than 30 days after receipt of EPA's notice.  In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 36 and 37, above.  If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## X.  DISPUTE RESOLUTION

40.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

41.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when one Party sends the other Party a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless expressly agreed to by all Parties and confirmed by electronic or written communication verifying such agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within

30 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

42.     Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States and the District a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

43.     The United States and the District shall serve their Statements of Position, if any, within 45 Days of receipt of Defendant's Statement of Position.  The Plaintiffs' Statements of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the Plaintiffs.  The Plaintiffs' Statements of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

44.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIV of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 30 Days of receipt of the Plaintiffs' Statements of Position pursuant to the preceding Paragraph.  The motion shall contain a written Statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

45.     The United States and the District shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

46.     Standard of Review.

a.     Disputes Concerning Matters Accorded Record Review.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 43 (Formal Dispute Resolution) pertaining to any request by Defendant to EPA and the District pursuant to Paragraph 14 (Interim Wellhead Gas Temperature Limits) for an alternative gas temperature limit or for an alternative

timeline for correcting an exceedance, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.      Other Disputes.   Except as otherwise provided in this Consent Decree, Defendant shall bear the burden of demonstrating by a preponderance of the evidence that its position complies with this Consent Decree and furthers the objectives of the Consent Decree.

47.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 32.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI. INFORMATION COLLECTION AND RETENTION

48.     The United States, the District, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.      monitor the progress of activities required under this Consent Decree;

b.      verify any data or information submitted to the United States or the District in accordance with the terms of this Consent Decree;

c.      obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

d.      obtain documentary evidence, including photographs and similar data; and

e.      assess Defendant's compliance with this Consent Decree.

49.     Upon request, Defendant shall provide EPA and the District, or their authorized representatives, splits of any samples taken by Defendant.  Upon request, EPA and the District shall provide Defendant splits of any samples taken by EPA or the District.

50.     Until three years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States or the District, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

51.     At any time during the applicable retention period in this Section and upon request by the United States or the District, Defendant shall deliver to the requestor a copy of any documents, record, or other information required to be maintained under this Section. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

52.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

53.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the District pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to

maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

54.     This Consent Decree resolves the civil claims of the United States and the District for the violations alleged in the Complaint filed through the date of lodging of this Decree.

55.     The United States and the District reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 55. This Consent Decree shall not be construed to limit the rights of the United States or the District to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal, state, or District laws, regulations, or permit conditions, except as expressly specified in Paragraph 55. The United States and the District further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

56.     In any subsequent administrative or judicial proceeding initiated by the United States or the District for injunctive relief, civil penalties, other appropriate relief relating to the Facility, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the District in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 54 of this Section.

57.     This Consent Decree is not a permit, or a modification of any permit, under any federal, District, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, District, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States and the District do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that

Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act or with any other provisions of federal, state, or local laws, regulations, or permits.

58.   This Consent Decree does not limit or affect the rights of Defendant or of the United States or the District against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

59.   This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII. COSTS

60.   The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the District, if they are determined to be the prevailing party by the Court, shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XIV. NOTICES

61.   Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-2-1-09873

and

Sylvia Quast
United States Attorney's Office
Eastern District of California
Suite 10-100
501 I Street
Sacramento, CA 95814

To EPA:

Brian P. Riedel
U.S. Environmental Protection Agency
Office of the Regional Counsel
Region 9
75 Hawthorne Street
Mail Code: ORC-2
San Francisco, CA 94105

To the District:

Catherine Redmond, District Counsel
San Joaquin Valley Unified Air Pollution Control District
1990 E. Gettysburg Avenue
Fresno, CA 92726

and

Morgan Lambert, Compliance Director
San Joaquin Valley Unified Air Pollution Control District
1990 E. Gettysburg Avenue
Fresno, CA 92726

To Defendant(s):

Kevin Basso
General Manager
Forward, Inc.
1145 W Charter Way
Stockton, CA 95206

and

Tim Benter
Vice President & Deputy General Counsel
Republic Services, Inc.
18500 North Allied Way
Phoenix, AZ 85054

and

Thomas Bruen
Law Offices of Thomas M. Bruen, P.C.
1990 N. California Blvd, Ste 620
Walnut Creek, CA 94596

62. Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

Consent Decree

- 21 -

63.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV. EFFECTIVE DATE

64.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVI. RETENTION OF JURISDICTION

65.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X and XVII, or effectuating or enforcing compliance with the terms of this Decree.

## XVII. MODIFICATION

66.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

## XVIII. TERMINATION

67.     All obligations set forth in Section V, including all reporting requirements pertaining to Section V obligations, shall terminate when the District permit that Defendant is applying for under paragraph 12(b) becomes effective, provided that:

a.     Defendant has certified to the EPA and the District that it has fulfilled all obligations of Section V of this Decree and all reporting requirements pertaining to those obligations, has paid the civil penalty under Section IV of this Decree and any outstanding stipulated penalties under Section VIII, and

b.     EPA, after consultation with the District, has accepted Defendant's certification and agrees that termination of the Section V obligations, including the relevant reporting obligations, is appropriate under the terms of the Consent Decree.

68.     This Consent Decree, including all remaining obligations under this Consent Decree, shall terminate on July 1, 2014, provided that Defendant has certified to the EPA and the District that it has fulfilled all obligations of this Decree, and that EPA, after consultation with the District, has accepted Defendant's certification and agrees that termination of the remaining obligations is appropriate under the terms of the Consent Decree.  The Parties shall file with the Court an appropriate stipulation reciting that the requirements of the Consent Decree have been met and notifying the Court of the termination of the Decree.

69.     If EPA or the District does not agree that the obligations of the Consent Decree have been fulfilled by Defendant, Defendant may invoke Section X (Dispute Resolution) of this Decree.  However, Defendant shall not seek Dispute Resolution under Paragraph 41 (Formal Dispute Resolution) of any dispute regarding termination until after it submits to EPA and the District certification that it has fulfilled the obligations in question.

## XIX. PUBLIC PARTICIPATION

70.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, inadequate, or that it is inconsistent with the requirements of the Act.  This Consent Decree is also subject to the public participation requirement in section 113(g) of the Act, 42 U.S.C. § 7413(g).  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XX. SIGNATORIES/SERVICE

71.     Each undersigned representative of Defendant, the District, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

72.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI. INTEGRATION

73.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supercedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXII. FINAL JUDGMENT

74.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the District, and Defendant.

## XXIII. APPENDICES

75.     The following appendices are attached to and part of this Consent Decree:

"Appendix A" is the "Improvements to Facility GCCS," "Appendix B" is the "Intermittent Well Program," and "Appendix C" is the "Schedule for Landfill Fleet Truck Replacement."

Dated and entered this 2nd  day of May, 2012.


_____
Edmund F. Brennan
UNITED STATES MAGISTRATE JUDGE
Eastern District of California

FOR PLAINTIFF UNITED STATES OF AMERICA:

DATED:  March ___, 2012

signature on original

_____
IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

DATED:  March ___, 2012          BENJAMIN B. WAGNER
                                 United States Attorney

signature on original

_____
SYLVIA QUAST
Assistant U.S. Attorney
U.S. Attorney's Office
Eastern District of California

FOR PLAINTIFF UNITED STATES OF AMERICA:


DATED:  March ___, 2012                    signature on original

_____
JARED BLUMENFELD
Regional Administrator
U.S. Environmental Protection Agency
Region 9

OF COUNSEL:
BRIAN P. RIEDEL
Assistant Regional Counsel
U.S. Environmental Protection Agency
 Region 9

DATED:  March ___, 2012                    signature on original

_____
CYNTHIA GILES
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

FOR PLAINTIFF SAN JOAQUIN VALLEY UNIFIED
AIR POLLUTION CONTROL DISTRICT:

DATED:  March ___, 2012                    SAN JOAQUIN VALLEY UNIFIED
                                           AIR POLLUTION CONTROL DISTRICT
                                                 signature on original
                                           _____
                                           CATHERINE T. REDMOND
                                           District Counsel
                                           Attorneys for the San Joaquin Valley
                                           Unified Air Pollution Control District

FOR DEFENDANT FORWARD, INC.:

DATED:  March ___, 2012

signature on original

TIM BENTER
Vice-President and Assistant Secretary
Forward, Inc.

DATED:  March ___, 2012        LAW OFFICES OF THOMAS M. BRUEN
A Professional Corporation

signature on original

THOMAS M. BRUEN
Attorneys for Forward, Inc.

**APPENDIX A**

**IMPROVEMENTS TO FACILITY GCCS**

1) Defendant shall abandon the following gas extraction wells in the GCCS: AO01, AO02, AO03, AO04, AO05, AO06, AO08, AO09, AO10, AO11, AO12, AO13, AO14, AO15, AO16, AO17, AO18, AO19, AO20, AO21, AO22, AO23, AO24, AO25, AO28, AO32, AO37, AO40, AO41, AO42, AO46, AO48, AO49, AO54, AO56, AO59, AO61, AO62, AO65, AO64, AO67, AO68, AO70, AO71, FOFU6-HC1, FU03-01, FU03-03, FU03-05, FU03-08, FU03-14, FU04-01, FU04-02, FU04-03, FU04-09, FU04-10, FU04-14, FU04-15, FU04-18, FU04-19, FU04-22, FU04-27, FU05-04, FU05-08, FU05-10, FU05-15, FU05-16, FU06-04, FU06-05, FU06-10,  FU06-14, FO03, FO05, FO06, FO07, FO09, FO10, FO11, FO13, FO14, FO15, FO16, FO17, FO18, FO20, FO23, FO25, FO26, FO27, FO28, FO29, FO31, FO32, FO33, FO34, FO35, FO36, FO37, FO38, FO44, FO48, FO49, FO50, FO54, FO55, FO56, FO59, FO60, FO61, FO63, FO65, FO69, FO70, FO71, FO72, FO85, FO88, FO94, FO98, FO100, FO101, FOHC-1A, FOHC-2A, FOHC-3A, FOHC-3B, FOHC-4B, FOHC-5A; Covanta East Manifold Wells -02, -05, -06, -07, -11, -12; and Covanta West Manifold Wells -01 and -02.

2) Defendant shall install gas extraction wells PW-1 through PW-53 in compliance with the drawing entitled "2012 GCCS Improvements Construction Site Plan" attached hereto, except that the number of wells to be installed may be modified by up to 10% of the total, and the specified placement of the wells may be altered by up to 75 feet.   The placement of specific wells may be altered by more than 75 feet where required due to the presence of soil stockpiles, site traffic patterns or the location of the work face, as long as the total number of wells has not decreased.  Defendant shall notify the United States and the District 21 days in advance if it decides to modify the number or alter the placement of the wells to be installed, and explain why the proposed change is required.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Consent Decree

**APPENDIX B**

**INTERMITTENT WELL PROGRAM**

1)     The Intermittent Well Program ("IWP") shall consist of the following extraction wells:

      A)  AO26, AO30, AO43, AO47, AO51, AO53, AO55, AO57, AO60, AO65R, AO68, AO66, AO69, FU03-HORZ-1, FU03-HORZ-2, FU03-10, FU03-12, FU03-13, FU04-16, FU04-17, FU04-23, FU04-28, FU05-11, FU06-HC1, FU06-HC2, FU06-01, FU06-02, FU06-08, FU034-WEL, FO02, FO04, FO08, FO19, FO21, FO43, FO47, FO52, FO57, FO63, FO64, FO67, FO89, FO90, FO91, FO99, FOHC-2B, and FOHC-4A.

      B)  Those extraction wells added to the IWP pursuant to paragraphs 6 and 7 of this Appendix.

2)     Defendant shall keep wells in the IWP closed, unless the 500 parts per million by volume ("ppmv") methane concentration limits established in 40 C.F.R. 60.753(d) and 60.755(c) or the 25 ppmv methane concentration limit for integrated surface monitoring are exceeded within 50 meters of the well, in which case Defendant may open and operate the well until methane concentrations return to below 500 ppmv or 25 ppmv, as applicable.  Defendant may also open a well in the IWP if Defendant receives approval in writing in advance from the Compliance Director of the District or his designee.  A well that has been opened and is being operated pursuant to this paragraph is not subject to the 5% oxygen limit set forth in Paragraph 14 of the Consent Decree.

3)     Defendant may open and operate a well in the IWP provided that oxygen concentrations in the well are below 5% for two consecutive monthly monitoring events.  If the well subsequently exceeds the 5% limit, Defendant shall take the actions specified in paragraph 6 of this Appendix.  Within ten days of opening a well pursuant to paragraph (2), Defendant will notify EPA and the Compliance Director of the District that it has opened the well, the basis for doing so, and the current oxygen levels in the well.

4)      If a well in the IWP has been closed for twelve continuous months after the Effective Date, Defendant shall permanently close and seal it, subject to the District and EPA's approval, unless Defendant can demonstrate that the well is still producing methane.

5)      Defendant may propose that an additional extraction well be added to the IWP, provided the well meets the following conditions:

A)  Within 5 days of the well exceeding the 5% oxygen limit, Defendant has visually inspected the wellhead for air intrusion (including sampling ports, leaky pneumatic pumps, wellhead boot seals, caps and hoses) and, if air intrusion is detected, repaired or replaced the well component allowing air intrusion.

B)  Defendant has reviewed the wellfield and surface monitoring data to ensure adequate well coverage and to rule out a subsurface oxidation event.  If there is evidence of a subsurface oxidation event, Defendant has immediately conducted maintenance on and augmented cover in the area of the subsurface oxidation event.

C)  After complying with subparagraphs (a) and (b) above, Defendant has reduced vacuum in the well for one hour, but oxygen levels continued to exceed the 5% oxygen limit, at which time, Defendant has closed the well and is operating it under positive pressure.

D)  Defendant notifies the District and EPA that it has closed the well, including a description of the actions it has taken pursuant to subparagraphs (a), (b), and (c) above.

6)      Upon receiving notice from the Defendant pursuant to Paragraph 6 of this Appendix that it proposes to add a well to the IWP, the well shall become part of the IWP unless the District or EPA notify Defendant within thirty days of receiving the notice that they object to including it in the IWP, including the reason for such objection.  Any disputes about the inclusion of a well in the IWP shall be resolved pursuant to Section X (Dispute Resolution) of the Consent Decree, and while any such dispute is pending, the well shall remain closed and no stipulated penalties shall accrue until the dispute is resolved.

As part of its semi-annual monitoring report required by the NSPS and as required in Section VIII, paragraph 16 of the Consent Decree, Defendant shall provide the EPA and the District with reports

on the status of each of the wells in the IWP, including monthly oxygen and methane monitoring results and when the well was opened and closed during the quarter, and identify any wells that it is proposing for inclusion in the IWP and any wells that it is proposing for abandonment.  Defendant shall also provide such a report to EPA and the District whenever Defendant seeks to add a well to the IWP pursuant to Paragraphs 6 and 7 of this Appendix; the report shall be current as of the date of the proposal.

# APPENDIX C – SCHEDULE FOR LANDFILL FLEET TRUCK REPLACEMENT

## 2012 Replacements Stockton & Fresno

Stockton

| Unit # | VIN | Description | Horse Power | Annual Hours | Mileage |
|---|---|---|---|---|---|
| 1324 | 4V2DC2HE8YN246665 | 2000 VOLVO FL TRUCK | 275 | 1513 | 34,799 |
| 1331 | 5VCDC6MF87H204201 | 2007 AUTOCAR FL TRUCK | 330 | 2303 | 52,969 |
| 1332 | 5VCDC6MFX7H204202 | 2007 AUTOCAR FL TRUCK | 330 | 2577 | 59,271 |
| 2445 | 5VCDC6MF36H202760 | 2006 AUTOCAR SL TRUCK | 330 | 2154 | 49,542 |
| 2451 | 5VCHC6MF67H204408 | 2007 AUTOCAR SL TRUCK | 330 | 2120 | 48,760 |
| 2452 | 5VCHC6MF87H204409 | 2007 AUTOCAR SL TRUCK | 330 | 2432 | 55,936 |
| 2455 | 5VCHC6JF89H209424 | 2009 AUTOCAR SL TRUCK | 345 | 2174 | 50,002 |

Fresno

| Unit # | VIN | Description | Horse Power | Annual Hours | Mileage |
|---|---|---|---|---|---|
| 1253 | 4V2DC6UE22N337032 | 2002 VOLVO FL TRUCK | 320 | 635 | 14605 |
| 1254 | 4V2DC6UE42N337033 | 2002 VOLVO FL TRUCK | 320 | 1034 | 23782 |
| 2255 | 5VCHC6UE83N194404 | 2003 AUTOCAR FL TR. | 280 | 399 | 9177 |

**2013 Replacements Fresno**

| Unit # | VIN | Description | Horse Power | Annual Hours | Mileage |
|--------|-----|-------------|-------------|--------------|---------|
| 2470 | 5VCDC6UE03N194377 | 2003 AUTOCAR SL TRUCK | 320 | 1679 | 38617 |
| 2471 | 5VCDC6UE23N194378 | 2003 AUTOCAR SL TRUCK | 320 | 1967 | 45241 |
| 2472 | 5VCDC6UE43N194379 | 2003 AUTOCAR SL TRUCK | 320 | 1837 | 42251 |
| 2473 | 5VCDC6UE23N194381 | 2003 AUTOCAR SL TRUCK | 320 | 2227 | 51221 |
| 2474 | 5VCDC6UE03N194380 | 2003 AUTOCAR SL TRUCK | 320 | 1425 | 32775 |
| 2475 | 5VCDC6UE83N194384 | 2003 AUTOCAR SL TRUCK | 320 | 805 | 18515 |
| 2476 | 5VCDC6UEX3N194385 | 2003 AUTOCAR SL TRUCK | 320 | 2124 | 48852 |
| 2477 | 5VCDC6UE13N194386 | 2003 AUTOCAR SL TRUCK | 320 | 799 | 18377 |
| 2468 | 4V2DC6HE52N337035 | 2002 VOLVO SL TRUCK | 275 | 1550 | 35650 |